**UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF NORTH DAKOTA**

_____ X

**JON Q. WRIGHT** and **JQ LICENSING, LLC**

     Plaintiff,

     v.

**VERSA LLC, SCHEELS ALL SPORTS, Inc.,**
and **ANDREW SUTTERER**

     Defendants.

_____ X

Case No. :

**COMPLAINT FOR COPYRIGHT INFRINGEMENT**

**JURY TRIAL DEMANDED**

## COMPLAINT

Plaintiffs Jon Q. Wright, and JQ Licensing, LLC, ("JQW" or "Plaintiffs") by and through its undersigned attorney, hereby prays to this honorable Court for relief based on the following:

## INTRODUCTION

1. This action arises from the willful copyright infringement of Plaintiffs' copyrighted and valuable illustration "JQ Fish Art: Walleye Green Lure" (the "Subject Work"). Defendants created, designed, manufactured, displayed, distributed, offered to sell, and/or sold apparel bearing an unlawful derivative design of the Subject Work (the "Infringing Products"). Plaintiffs seek to obtain injunctive relief against all Defendants to stop any unlawful activity and prevent any further infringement of Plaintiffs' artwork. Inasmuch as Defendants' infringements have damaged Plaintiffs' business and threatens to damage it further, Plaintiffs also seek injunctive relief, declaratory relief, and damages for the full amount of Plaintiffs' losses, plus statutory damages, attorneys' fees, and costs pursuant to 17 U.S.C. §§ 504(c) and 505.

1

### THE PARTIES

2.     Plaintiff Jon Q. Wright is an individual domiciled and residing in the State of Montana and the author of various fish illustrations, including the aforementioned Work, shown *infra*.

3.     Wright is a member of JQ Licensing LLC, a limited liability company duly formed under the laws of the State of Minnesota and registered in the State of Montana as a foreign limited liability company (hereafter, "JQ Licensing").  Wright licenses his artwork exclusively through JQ Licensing.

4.     Defendant Versa LLC ("Versa") is a limited liability Company, duly organized under the laws of the state of Minnesota, with its principal place of business in Oak Grove, Minnesota.

5.     Defendant Scheels All Sports, Inc. ("Scheels") is a corporation, duly organized under the laws of the state of North Dakota, with its principal place of business in Fargo, North Dakota.

6.     Defendant Andrew Sutterer ("Sutterer") is an individual, who upon information and belief, resides in Oak Grove, Minnesota.

7.     Upon information and belief, Defendant Sutterer is the sole principal, member, and manager of Versa.

8.     Versa is in the business of designing, manufacturing, and distributing apparel and other goods targeting consumers interested in hunting, fishing, and other related outdoor activities.

9.     Scheels is a retailer, with locations across at least 16 different states, as well as an online presence,

### JURISDICTION AND VENUE

10.     This is an action for copyright infringement arising under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended).

11.    This Court has subject matter jurisdiction over Plaintiff's copyright infringement claims under the Copyright Act of 1976 (17 U.S.C. §§ 101 *et seq.* as amended) and 28 U.S.C. §§ 1331 and 1338.

12.    Defendant Scheels is a domestic corporation organized under the laws of North Dakota, with its principal place of business in Fargo, North Dakota. Accordingly, this Court has general personal jurisdiction over Scheels.

13.    Upon information and belief, the Infringing Products have been and continue to be offered for sale and sold in North Dakota, including through Scheels' retail locations and online platform, thereby causing harm in this District.

14.    Versa has purposefully directed its activities toward North Dakota, and Plaintiffs' claims arise out of those activities.

15.    Upon information and belief, Versa entered into one or more agreements with Scheels to supply products, including the Infringing Products, for sale through Scheels' retail locations and e-commerce platform.

16.    Through that relationship, Versa knowingly placed the Infringing Products into the stream of commerce with the expectation they would be sold nationwide, including in North Dakota.

17.    Versa distributed, shipped, or caused to be distributed the Infringing Products to Scheels' retail locations, including locations in North Dakota.

18.    Upon information and belief, Versa also distributed the Infringing Products to Scheels' warehouses or fulfillment centers from which products are supplied to retail locations and shipped to customers, including in North Dakota.

19.    Versa maintains an ongoing commercial relationship with Scheels.

20.     Versa knew that Scheels operates retail locations in North Dakota and continued supplying the Infringing Products with the expectation they would be sold in North Dakota.

21.     Upon information and belief, Versa authorized, facilitated, and benefited from Scheels' marketing, offering for sale, and sale of the Infringing Products in North Dakota.

22.     Versa retained and exercised control over the design, branding, and specifications of the Infringing Products sold through Scheels.

23.     Upon information and belief, Sutterer personally directed and participated in the conduct giving rise to Plaintiffs' claims, including by negotiating and executing the agreement(s) between Versa and Scheels.

24.     Upon information and belief, Sutterer authorized and controlled the design, manufacture, and distribution of the Infringing Products, including directing their sale and distribution through Scheels.

25.     Upon information and belief, Sutterer knew and intended that the Infringing Products would be marketed, offered for sale, and sold through Scheels in North Dakota.

26.     Versa derived revenue from the sale of Infringing Products in North Dakota through Scheels.

27.     Plaintiffs' claims arise directly from Defendants' contacts with North Dakota, including the distribution, offering for sale, and sale of the Infringing Products through Scheels in North Dakota.

28.     Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

29.    Venue is proper in this district under 28 U.S.C. §§ 1391 and 1400(a) in that this is the judicial district in which a substantial part of the acts and omissions giving rise to the claims occurred.

## PLAINTIFFS' ARTWORK

30.    JQW is the author of numerous works of art that predominantly focus on freshwater fish. His success as a wildlife illustrator has been dependent on experience, patience, and dedication. Each of his paintings is built on his talent and 40 years of experience. Due to his unique talents and painstaking attention to detail, his artwork is highly pursued and often misappropriated.

31.    JQW is the author and copyright owner of the Subject Work.

32.    The Subject Work was registered with the U.S. Copyright Office prior to the initiation of litigation under U.S. Copyright Registration Number VAu-1-021-822.  A true and accurate copy of the registration certificate for the Subject Work is annexed hereto as **Exhibit A**.

33.    JQW's practice of creating highly detailed and unique wildlife illustrations is an extraordinarily time-consuming process involving a dizzying multiplicity of steps.

34.    In order to create his detailed fish illustrations, including the Subject Work, JQW first faces the laborious task of catching a trophy-sized specimen of the subject fish.

35.    Once a trophy fish is caught, JQW takes detailed photographs of the fish, freezes, and then partially thaws the fish in order to mold the body into the desired position.  He then impales the fish on a stake and captures a 360° perspective of the fish by taking a series of photographs.

36.    Only then does JQW begin the sketching process, referring to the photographs as reference material.

37.     JQW then takes numerous artistic liberties with certain aspects of the fish illustration. He expresses elements of the fish in a manner that is creative and unique to his style and artistic abilities

38.     The Subject Work is an original illustration depicting a stylized walleye in a dynamic, mid-strike pose interacting with a lure.

39.     The protectable elements of the work include the particular selection, coordination, and arrangement of expressive features, including the fish's three-quarter body orientation, exaggerated curvature, and overall dynamic composition.

40.     The Subject Work further includes original expressive choices in the shape, angle, and flare of the open mouth and jaw, as well as the stylized placement and structure of the eye.

41.     The proportions and relative positioning of the head, torso, fins, and tail are not anatomically dictated, but instead reflect deliberate artistic choices that create a distinctive visual impression.

42.     The Subject Work also incorporates unique expressive detailing in the fins, including their direction, bend, and proportional exaggeration, as well as coordinated contouring in the head and gill region.

43.     The curvature of the body and exaggerated belly are intentionally designed to convey motion, depth, and the appearance of a trophy-sized fish, and are not dictated by nature.

44.     The work further includes a coordinated composition depicting the fish oriented toward and striking at a lure positioned in a specific spatial relationship to the fish.

45.     These elements, considered individually and in combination, constitute original, protectable expression.

46.     JQW's artwork has been painstakingly created, with each minute detail being depicted precisely in the artwork.

47.     JQW estimates that he has spent hundreds of hours painting a single one of his fish illustrations, touching each individual painted scale with a paintbrush between three and five times.

48.     In creating and expression of a walleye fish that is visually exciting to the viewer, JQW has effectually created a walleye that is comprised of design elements and other creative features that do not exist in nature.

49.     JQW artwork is very valuable, as there are not many artists painting freshwater fish, and even fewer creating works with the type of detail employed by JQW.

50.     Because of JQW's unique talents, painstaking attention to detail, and unique expression of fish of all species, his artwork is highly pursued.

51.     JQW's success as a wildlife illustrator, and by implication the value of his artwork, is dependent on experience, patience, and dedication, and each of his paintings is built on his talent and 40 years of expertise.

## DEFENDANTS' INFRINGING CONDUCT

52.     Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

53.     Upon information and belief, Sutterer is the sole principal of Versa LLC and is responsible for overseeing its product design, branding, and commercial operations.

54.     Upon information and belief, Sutterer directed and/or was responsible for the creation of the artwork embodied in the Infringing Products (the "Infringing Design").

55.    In the alternative, upon information and belief, Sutterer engaged or retained a third party to create the Infringing Design and maintained the right and ability to control the design and its use.

56.    Sutterer knowingly and intentionally participated in the creation, approval, and commercial exploitation of the Infringing Design, including its reproduction and distribution on the Infringing Products.

57.    Upon information and belief, Sutterer profited from the unauthorized reproduction and distribution of the Subject Work embodied in the Infringing Products.

58.    Sutterer further directed and/or authorized the manufacture, marketing, and sale of the Infringing Products, including their distribution through Scheels.

59.    Directly below is an exemplar of the Infringing Design:



60.    A side-by-side comparison of the Subject Work (left) and the relevant portion of the Infringing Design (right) demonstrates that the walleye fish in the Infringing Design is an unlawful derivative work as it copies JQW's protectable elements of expression:



61.     Directly below, the Subject Work is set to 50% opacity and then superimposed over the walleye fish within the Infringing Design so that the creative features of both walleye fish are visible:



62.     The visual comparisons above demonstrate unlawful copying of protectible and highly specific elements of expression, including, but not limited to a) placement and positioning of the fins, tail, and other anatomical features b) the proportions of the anatomical features, relative to one another; c) the shape, positioning, and curvature of the body of the walleye fish; d) the shape, positioning, and curvature of the fins; e) the mouth opening size, shape, and fine line details; f) exact same structural detailing; g) the spot/speckling patterns in various portions of the fish; h) the contouring, shading, and artistic details that create the appearance of surface texture; i) the distinctive head tilt and attack angle; j) the stylized placement and expression of the eye; k) the layered contouring of the gill plate; l) the spiked dorsal fin silhouette; m) the diagonal segmentation between upper and lower body regions; n) the tapered body structure and tail orientation; and o) the preservation of underlying contour line structure in simplified embroidered form.

63.    The walleye fish in the Subject Work reflects a particularized selection, arrangement, coordination, and artistic execution of elements, the vast majority of which are copied in the Infringing Design.

64.    The Infringing Design copies the same selection, arrangement, and combination of these protectable elements, rather than merely replicating a generic image of a walleye fish.

65.    The walleye fish in the Infringing Design reproduces the distinctive shading structure, contouring, and edge definition of the Subject Work, including the placement and arrangement of light and dark regions, which preserve the Subject Work's underlying stylistic expression despite simplification in the embroidered medium

66.    The walleye fish in the Infringing Design exhibits aligned contours, shading structure, and stroke patterns, reflecting the same underlying arrangement of expressive elements as the Subject Work.

67.    As demonstrated above, the fish depicted in the Infringing Design is strikingly similar to, and appropriates the protectable expression embodied in, the Subject Work, with only superficial modifications that do not alter the overall visual impression.

68.    The Infringing Design reflects a simplified translation of the Subject Work into an embroidered medium, preserving the underlying contours, proportions, and arrangement of expressive elements while reducing fine detail.

69.    Upon information and belief, the Subject Work was intentionally altered to produce the Infringing Design through mechanical simplification for ease of reproduction in an embroidered medium, rather than as a result of independent creative expression.

70.    Defendant Scheels offered for sale and sold the Infringing Products through its website and retail locations, including locations in North Dakota, and facilitated the distribution of the Infringing Products to consumers.

71.    Upon information and belief, after receiving notice that the Infringing Products were infringing, Defendant Scheels continued to offer for sale the Infringing Products through its e-commerce platform and at multiple brick-and-mortar retail locations, including at least three locations.

72.    Despite receiving repeated notice of Plaintiffs' rights and the infringing nature of the Infringing Products, Versa and Sutterer knowingly permitted, authorized, and facilitated the continued manufacture, distribution, and sale of the Infringing Products, including through third-party retailers, such as Scheels.

73.    Defendants' infringement has been willful. Defendants continued to manufacture, distribute, and sell the Infringing Products after receiving notice of Plaintiffs' rights, demonstrating knowing and intentional disregard of those rights.

74.    As a result of Defendants' infringement, Plaintiffs have suffered damages, including lost licensing revenue and diminution in the value of the Subject Work.

75.    The allegations herein apply to all products, materials, advertisements, and other uses by Defendants incorporating the Infringing Design. The images and comparisons set forth herein are representative exemplars and do not reflect the full scope of Defendants' infringing conduct.

**COUNT I**
**(COPYRIGHT INFRINGEMENT – 17 U.S.C. §101**
**Against All Defendants and Each)**

76.     Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

77.     Wright is the author and sole owner of the copyrights to the Subject Work and holds valid copyright registrations in accordance with the United State Copyright Act.

78.     The Subject Work is copyrightable subject matter under 17 U.S.C. §102(a).

79.     Wright has complied in all respects with the provisions and requirements of the Copyright Act.

80.     Wright duly registered the copyrights in and to the Subject Work with the United States Copyright Office.

81.     Wright has exclusive rights under 17 U.S.C. §106 to reproduce, prepare derivative works of, distribute copies of, and publicly display the Subject Work.

82.     Upon information and belief, Versa and Sutterer accessed the Subject Work through publicly available sources, including Plaintiffs' online portfolio and other widely disseminated digital publications of the Subject Work.

83.     Defendant Scheels acquired the Infringing Products incorporating the Infringing Design from Versa for purposes of resale and distribution.

84.     Access is further established by the striking similarity between the Subject Work and the Infringing Design, as detailed herein.

85.     The Infringing Design copies numerous protectable elements of expression unique to Wright's artistic style, including his original selection, coordination, and arrangement of expressive features, as set forth herein.

86.    The Subject Work reflects Wright's original and creative selection, coordination, and arrangement of visual elements.

87.    Defendants, and each of them, have infringed Plaintiffs' rights by copying the Subject Work, creating and exploiting an unauthorized derivative work, and displaying, distributing, reproducing, and otherwise commercially exploiting the Infringing Design.

88.    Defendants, and each of them, were directly involved in, and/or had the right and ability to control, the reproduction, distribution, display, and creation of derivative works incorporating the Subject Work.

89.    As a result of Defendants' acts of infringement, Plaintiffs have suffered damages, including lost licensing revenue and diminution in the value of the Subject Work, in an amount to be determined at trial.

90.    Defendants have obtained direct and indirect profits attributable to their infringement that they would not have realized but for their unlawful conduct. Plaintiffs are entitled to disgorgement of such profits in an amount to be determined at trial.

91.    Upon information and belief, Defendants' acts of copyright infringement were willful, intentional, and undertaken with knowledge of Plaintiffs' rights, entitling Plaintiffs to statutory damages under 17 U.S.C. § 504(c)(2) of up to $150,000 per infringement. Plaintiffs reserve the right to elect between actual and statutory damages.

92.    In the alternative, Plaintiffs seek statutory damages under 17 U.S.C. § 504(c)(1) for Defendants' unauthorized use of the Subject Work.

93.    Plaintiffs seek all damages and remedies available under 17 U.S.C. §§ 504 and 505.

## COUNT II
### (VICARIOUS LIABILITY – Against Defendants Versa and Sutterer)

94.    Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

95.    To the extent that the Infringing Design was created by a presently unknown third party, Versa and Sutterer are vicariously liable for the direct infringement alleged herein because they had the right and ability to supervise the infringing conduct and a direct financial interest in such conduct.

96.    Versa and Sutterer exercised control over the design, approval, manufacture, and commercial exploitation of the Infringing Design, including the decision to incorporate the Infringing Design into products offered for sale.

97.    Versa and Sutterer had the right and practical ability to review, approve, reject, or modify the Infringing Design, and to control whether and how it was used in connection with the Infringing Products.

98.    Versa and Sutterer further had the right and ability to control the distribution and sale of the Infringing Products through third-party retailers, including Scheels, and to stop or limit such infringing conduct.

99.    Despite having such rights and abilities, Versa and Sutterer authorized and permitted the continued manufacture, distribution, and sale of the Infringing Products, including through third-party retailers.

100.    Versa and Sutterer had a direct financial interest in the infringing conduct, including revenue derived from the sale of Infringing Products and from their distribution through third-party retail channels.

101.    Upon information and belief, Versa and Sutterer failed to undertake reasonable measures to ensure that the Infringing Design was authorized for use, including failing to verify whether the Subject Work was subject to copyright protection or whether a license was required.

102.    As a result of Versa's and Sutterer's vicarious infringement, Plaintiffs have suffered damages, including lost licensing revenue and diminution in the value of the Subject Work, in an amount to be determined at trial.

103.    Versa and Sutterer have obtained direct and indirect profits attributable to their infringement that they would not have realized but for their unlawful conduct. Plaintiffs are entitled to disgorgement of such profits in an amount to be determined at trial.

104.    Upon information and belief, Versa's and Sutterer's acts of infringement were willful, intentional, and undertaken with knowledge of Plaintiffs' rights, entitling Plaintiffs to statutory damages under 17 U.S.C. § 504(c)(2) of up to $150,000 per infringement. Plaintiffs reserve the right to elect between actual and statutory damages.

105.    In the alternative, Plaintiffs seek statutory damages under 17 U.S.C. § 504(c)(1).

106.    Plaintiffs seek all damages and remedies available under 17 U.S.C. §§ 504 and 505.

## COUNT III
### (CONTRIBUTORY LIABILITY – Against Defendants Versa and Sutterer)

107.    Plaintiffs repeat, reallege, and incorporate the allegations contained in the preceding paragraphs of this Complaint as if fully set forth herein.

108.    Versa and Sutterer had actual knowledge of Plaintiffs' rights in the Subject Work and of the infringing nature of the Infringing Design and Infringing Products, including through written notice provided prior to the filing of this action.

109.    Despite such knowledge, Versa and Sutterer continued to authorize, facilitate, and materially contribute to the infringement of Plaintiffs' copyrights.

110. Versa and Sutterer materially contributed to, and induced, the infringing conduct of third parties by manufacturing, supplying, and distributing the Infringing Products to downstream retailers, including Scheels, for further sale to consumers.

111. Upon information and belief, Versa and Sutterer continued to supply, replenish, and support the distribution of the Infringing Products after receiving notice of infringement, thereby enabling ongoing infringing sales.

112. Versa and Sutterer further facilitated infringement by permitting and encouraging the continued marketing, offering for sale, and sale of the Infringing Products through third-party retail channels.

113. Versa and Sutterer knew, or were willfully blind to the fact, that their conduct would result in the continued infringement of Plaintiffs' copyrighted work.

114. As a direct and proximate result of Versa's and Sutterer's contributory infringement, Plaintiffs have suffered damages in an amount to be determined at trial.

115. Versa and Sutterer have obtained direct and indirect profits attributable to their contributory infringement and are liable to Plaintiffs for disgorgement of such profits.

116. Upon information and belief, Versa's and Sutterer's contributory infringement has been willful, intentional, and undertaken with knowledge of Plaintiffs' rights, entitling Plaintiffs to statutory damages under 17 U.S.C. § 504(c)(2). Plaintiffs reserve the right to elect between actual and statutory damages.

117. In the alternative, Plaintiffs seek statutory damages under 17 U.S.C. § 504(c)(1).

118. Plaintiffs seek all damages and remedies available under 17 U.S.C. §§ 504 and 505.

**PRAYER FOR RELIEF**

WHEREFORE, Plaintiff requests judgment against Defendants, and each of them, as follows:

A.  that the Court enter judgment against Defendants setting forth that Defendants have willfully infringed Plaintiffs' federally registered copyrights to the Subject Work as contemplated by 17 U.S.C. §504(c)(2);

B.  alternatively, that the Court enter judgment against Defendants setting forth that Defendants have infringed Plaintiffs' federally registered copyright to the Subject Work, pursuant to 17 U.S.C. § 501;

C.  that Defendants and its respective agents, officers and servants be enjoined from importing, manufacturing, distributing, displaying, offering for sale, selling or otherwise trafficking in any materials that infringe Plaintiffs' copyrights in and to the Works;

D.  impounding all unauthorized material that bears infringing copies of Plaintiffs' copyrighted artwork in the possession or control of Defendants pursuant to 17 U.S.C. §503(a)(1)(A), and ordering destruction of all unauthorized material bearing the Works, pursuant to 17 U.S.C. §503(b);

E.  that Plaintiffs be awarded all profits of Defendants plus all losses of Plaintiffs, the exact sum to be proven at the time of trial, or, if elected before final judgment, statutory damages for willful infringement as available under 17 U.S.C. § 504(c);

F.  that Plaintiffs be awarded its attorneys' fees as available under 17 U.S.C. § 504(c) or other applicable statute;

G.  that Plaintiffs be awarded pre- and post-judgment interest as allowed by law;

H.  that Plaintiffs be awarded the costs of this action; and

I.    that Plaintiff be awarded such further legal and equitable relief as the Court deems proper.

PLAINTIFF DEMANDS A JURY TRIAL ON ALL ISSUES SO TRIABLE PURSUANT TO FED. R. CIV. P. 38 AND THE 7TH AMENDMENT TO THE UNITED STATES CONSTITUTION.

Respectfully submitted,

Date:  April 22, 2026

By:    */s/ Dmitry Lapin*

Dmitry Lapin, Esq.
Axenfeld Law Group, LLC
2001 Market Street Suite 2500
Philadelphia, PA 19103
dmitry@axenfeldlaw.com
917-979-4570

*Attorney for Plaintiff Jon Q. Wright,*
*and JQ Licensing, LLC*